<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GRAND CRU, LLC d/b/a RESTAURANT NICHOLAS, | |
| Plaintiff, | Civ. No. 20-6878 |
| v. | **OPINION** |
| LIBERTY MUTUAL INSURANCE COMPANY *et al.*, | |
| Defendants. | |

<u>THOMPSON, U.S.D.J.</u>

**<u>INTRODUCTION</u>**

This matter comes before the Court upon the Motion for Leave to File a Second Amended Complaint and to Remand filed by Plaintiff Grand Cru, LLC d/b/a Restaurant Nicholas ("Plaintiff"). (ECF No. 15.) Defendant Ohio Security Insurance Company ("OSI") opposes the Motion. (ECF No. 18.) The Court has decided this matter based upon the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Plaintiff's Motion for Leave to File a Second Amended Complaint and to Remand (ECF No. 15) is granted in part and denied in part.

**<u>BACKGROUND</u>**

**I.      Factual Background**

This is an insurance dispute arising out of business interruptions caused by the COVID-19 pandemic. Plaintiff is a restaurant located in Red Bank, New Jersey. (1st Am. Compl. ¶ 4, ECF No. 1-2.) Plaintiff has an insurance policy (the "Policy") issued by Defendant OSI. (*Id.* ¶¶

9–10.) The insurance contract's policy period is from August 15, 2019 to August 15, 2020. (*Id.* ¶ 10.) The Policy includes coverage for "Business Income, Extra Expense, and Civil Authority." (*Id.* ¶ 12.) The Policy excludes losses caused by, resulting from, or relating to viruses (the "Virus Exclusion"). (*Id.* ¶ 21.)

In March 2020, in response to the COVID-19 pandemic, the Governor of New Jersey issued Executive Order No. 107, which, among other things, prohibited restaurants in New Jersey from serving patrons on-site, but permitted restaurants to offer delivery and takeout services. (*Id.* ¶¶ 18–19); *see also* N.J. Exec. Order No. 107 (Mar. 21, 2020), https://nj.gov/infobank/eo/056murphy/pdf/EO-107.pdf. As a result of the Executive Order, customers were unable to dine at Plaintiff's restaurant. (1st Am. Compl. ¶ 19.)

Plaintiff argues that the Virus Exclusion is void as a matter of public policy. (*Id.* ¶¶ 25–26.) In support of its argument, Plaintiff cites a bill introduced in the U.S. House of Representatives and a bill introduced in the New Jersey General Assembly. (*See id.* ¶¶ 26–28 (citing H.R. 6494, 116th Cong. (2020); Assemb. No. 3844, 219th Leg. (N.J. 2020)). Plaintiff brings this action under the New Jersey Declaratory Judgment Act, N.J. Stat. Ann. § 2A:16-50–62. (1st Am. Compl. ¶¶ 30–38.) Plaintiff seeks a declaratory judgment that the Policy covers the losses suffered by Plaintiff resulting from the COVID-19 pandemic and Executive Order No. 107. (*Id.* ¶¶ 31–35.)

## II.   Procedural History

On April 3, 2020, Plaintiff filed the Complaint in the New Jersey Superior Court in Monmouth County. (ECF No. 1-1.) Plaintiff filed the First Amended Complaint on May 7, 2020. (ECF No. 1-2.) On June 5, 2020, Defendants removed the case based on this Court's diversity jurisdiction. (*See* Notice of Removal ¶ 4, ECF No. 1.) Defendants filed a Motion to Stay (ECF

2

No. 9), which the Court granted (ECF No. 24). The parties executed a Stipulation of Dismissal of Defendant Liberty Mutual Insurance Company and Defendant Liberty Mutual Mid-Atlantic Insurance Company. (ECF No. 13.) Defendant OSI is the only remaining Defendant.

On June 26, 2020, Plaintiff filed a Motion for Leave to File a Second Amended Complaint and to Remand. (ECF No. 15.) In the proposed Second Amended Complaint, Plaintiff seeks to join Plaintiff's broker, Jacobson, Goldfarb & Scott, Inc. ("JGS"), as a defendant. (*See* 2d Am. Compl. ¶¶ 50–67, DiCicco Cert. Ex. A, ECF No. 15-1.) Plaintiff asserts negligence and breach-of-special-duty claims against JGS. (*See id.*) Plaintiff submits that JGS failed to advise Plaintiff of the Virus Exclusion and of the availability of other insurance policies without similar exclusions. (*See id.*) The proposed amendment would not add claims against Defendant OSI. (*See id.* ¶¶ 41–49.) As an alternative to amendment and remand, Plaintiff requests that the Court exercise its discretion under the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201–02, to decline jurisdiction over this case. (Pl.'s Br. at 6–7, ECF No. 15-2.)

Plaintiff is a citizen of New Jersey for purposes of diversity jurisdiction. (*See* Notice of Removal ¶ 6.) Defendant OSI is a citizen of Massachusetts and New Hampshire. (*See id.* ¶ 7.) JGS, like Plaintiff, is a citizen of New Jersey. (*See* 2d Am. Compl. ¶ 6.)

On August 14, 2020, the Court lifted the stay. (ECF No. 26.) Plaintiff's Motion for Leave to File a Second Amended Complaint and to Remand (ECF No. 15) is presently before the Court.

## LEGAL STANDARDS

### I.     Motion to Amend and Remand

A defendant may remove a civil action filed in state court to the federal court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). The federal court to which the action is removed, however, must have subject-matter jurisdiction. *See* § 1447(c). Federal district

courts have subject-matter jurisdiction based on diversity where an action arises between citizens of different states and the amount in controversy exceeds $75,000. § 1332(a)(1). To establish complete diversity of citizenship between the parties, each plaintiff must be a citizen of a different state from each defendant. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373–74 (1978). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. § 1447(c).

Generally, courts "freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[A] court must scrutinize motions to amend more carefully," however, "where a plaintiff seeks to join a non-diverse party . . . and . . . deprive a federal court of subject matter jurisdiction." *City of Perth Amboy v. Safeco Ins. Co. of Am.*, 539 F. Supp. 2d 742, 746 (D.N.J. 2008). "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e).

District courts in this Circuit evaluate motions to amend and remand under § 1447(e) by applying the Fifth Circuit's multi-factor test in *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). *See, e.g.*, *Aldorasi v. Crossroads Hosp. & Mgmt. Co.*, 344 F. Supp. 3d 814, 826 (E.D. Pa. 2018); *Perth Amboy*, 539 F. Supp. 2d at 746; *see also Hayden v. Westfield Ins. Co.*, 586 F. App'x 835, 840–41 (3d Cir. 2014) (declining to decide which analytical approach should apply to § 1447(e), but noting that district courts in the Third Circuit have adopted the *Hensgens* test). Under *Hensgens*, courts consider

> [1] the extent to which the purpose of the amendment is to defeat federal jurisdiction, [2] whether plaintiff has been dilatory in asking for amendment, [3] whether plaintiff will be significantly injured if amendment is not allowed, and [4] any other factors bearing on the equities.

833 F.2d at 1182.

**II.     Motion to Decline Jurisdiction Under the Declaratory Judgment Act**

Under the DJA, federal courts "*may* declare the rights and other legal relations of any interested party seeking [a declaratory judgment], whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). "Granting a declaratory judgment is therefore discretionary and a court may abstain from entertaining an action seeking only declaratory relief." *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 281 (3d Cir. 2017) (citations omitted). "This is an exception to the general rule that 'federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.'" *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134 (3d Cir. 2014) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)). A court's discretion in this regard is "substantial" but "bounded and reviewable." *Kelly*, 868 F.3d at 282 (quoting *Reifer*, 751 F.3d at 140).

"[C]ourts deciding whether to entertain a declaratory action . . . weigh certain enumerated and other factors 'bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for [federal] resolution.'" *Kelly*, 868 F.3d at 282 (quoting *Reifer*, 751 F.3d at 138). First, courts determine whether there is a "parallel state proceeding." *Id.* (quoting *Reifer*, 751 F.3d at 143, 146). "Although the existence of a parallel state proceeding is but one factor for courts to consider, it is a significant factor that is treated with 'increased emphasis.'" *Id.* (quoting *Reifer*, 751 F.3d at 144). "[D]istrict courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors." *Reifer*, 751 F.3d at 144. Courts may consider the following factors to the extent they are relevant:

(1)     the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
(2)     the convenience of the parties;
(3)     the public interest in settlement of the uncertainty of obligation;

5

(4)     the availability and relative convenience of other remedies;

(5)     a general policy of restraint when the same issues are pending in a state court;

(6)     avoidance of duplicative litigation;

(7)     prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and

(8)     (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Id.* at 146. These factors are non-exhaustive. *Id.* Courts also consider the Third Circuit's additional guidance in *State Auto Insurance Cos. v. Summy*, 234 F.3d 131 (3d Cir. 2000), in insurance matters. *Reifer*, 751 F.3d at 146–47.

## DISCUSSION

**I.      Motion to Amend and Remand**

Joinder of JGS would destroy complete diversity. *See Owen*, 437 U.S. at 373–74. Therefore, the Court evaluates Plaintiff's Motion under 28 U.S.C. § 1447(e) and the *Hensgens* factors.

A.      *Primary Purpose of Amendment*

In assessing a plaintiff's primary purpose for amendment, "[t]he parties' actions during the period between the filing of the complaint and the motion to amend [are] . . . appropriate matter[s] for consideration." *Perth Amboy*, 539 F. Supp. 2d at 746–47. "Generally, if a proposed claim is viable, and there is genuine intent to prosecute the claim in good faith, the primary purpose of joinder is not to defeat federal jurisdiction." *Id.* at 754. "In instances where a plaintiff knows of a defendant's activities but chooses not to include him," however, "courts will deny the late attempt to join, viewing the late addition as nothing more than an attempt to destroy diversity." *Milko v. Int'l Flavors & Fragrances, Inc.*, 2016 WL 8709998, at *7 (D.N.J. July 29, 2016) (citation and internal quotations omitted).

When Plaintiff filed the first two Complaints, it knew JGS' identity; JGS had been Plaintiff's broker since 2015. (*See* 2d Am. Compl. ¶ 16.) Plaintiff knew about JGS' alleged conduct; JGS assisted Plaintiff in securing the Policy. (*See id.* ¶ 15.) When it filed the Complaints, Plaintiff knew, or at least should have known, that not all insurance policies in the marketplace excluded virus-related losses; the statement accompanying the New Jersey bill cited by Plaintiff explains that "global virus transmission and pandemic are *generally* excluded from the list of covered perils." Assemb. No. 3844, 219th Leg. (N.J. 2020) (emphasis added). And Plaintiff had reason to investigate and research potential claims against JGS; JGS' alleged conduct relates to the Policy at issue in this case. (*See* 2d Am. Compl. ¶¶ 12–20.) Therefore, this case is different from cases in which plaintiffs had no reason to include joined defendants in the first instance. *Compare Perth Amboy*, 539 F. Supp. 2d at 747 (concluding that the plaintiff was aware of the joined defendant's involvement in the action, but the joined defendant did not become a proper party until a counterclaim was filed); *31-01 Broadway Assocs., LLC v. Travelers Cas. & Sur. Co.*, 2019 WL 5061320, at *4 (D.N.J. Oct. 10, 2019) (concluding that the joined defendant would not have been a proper party in the litigation as it was originally framed by the plaintiffs); *BrainBuilders, LLC v. Optum, Inc.*, 2019 WL 2618112, at *4 (D.N.J. Feb. 4, 2019) (concluding that, although the plaintiff knew about the joined defendant's activities, the joined defendant engaged in new conduct after the filing of the initial complaint), *with* (2d Am. Compl. ¶¶ 12–20 (indicating that JGS' alleged conduct occurred before the filing of the original Complaint and related to the selection of the Policy)). The Court concludes that the first *Hensgens* factor weighs in favor of denying Plaintiff's Motion.

B.    *Dilatory Conduct*

The second *Hensgens* factor "takes into consideration the length of time as well as the nature of the delay." *Perth Amboy*, 539 F. Supp. 2d at 748. In this case, the length of the delay and the nature of the delay appear to support opposite conclusions.

On the one hand, Plaintiff filed the present Motion eighty-four days after the filing of the initial Complaint, fifty days after the filing of the First Amended Complaint, and twenty-one days after this case was removed. This Court has concluded that longer periods did not constitute dilatory conduct. *See Agostino v. Costco Wholesale Corp.*, 2019 WL 6080242, at *5 (D.N.J. June 24, 2019) (concluding that the plaintiff was not dilatory in seeking to amend the complaint fewer than four months after commencement of the action); *Confessore v. AGCO Corp.*, 2015 WL 4430472, at *6 (D.N.J. July 20, 2015) (concluding that the plaintiff was not dilatory in seeking to amend the complaint less than one year after commencement of the action). *But see Milko*, 2016 WL 8709998, at *7 (concluding that the plaintiff was dilatory where the plaintiff filed his motion nearly two months after the original complaint and fourteen days after removal). Moreover, discovery has not yet begun.

On the other hand, Plaintiff has not provided a persuasive explanation as to why it could not have joined JGS before removal. This supports a finding of dilatoriness. *See Albino v. Home Depot*, 2020 WL 2932946, at *5 (D.N.J. June 3, 2020) (concluding that the plaintiffs' conduct was dilatory where the plaintiffs failed to explain why they waited to add the joined defendants); *Milko*, 2016 WL 8709998, at *7 (concluding that the plaintiff's conduct was dilatory where the plaintiff failed to "provide any credible explanation for his inability to identify" the joined defendants sooner). Considering the length and nature of Plaintiff's delay, the second *Hensgens* factor appears to favor neither party over the other.

C.     *Significant Injury to Plaintiff*

Courts assess "both economic and legal prejudice" under the third *Hensgens* factor. *Perth Amboy*, 539 F. Supp. 2d at 749. Economic prejudice may arise where plaintiffs are "required to litigate two cases involving essentially the same set of facts, documents, and issues in two different forums." *See id.* However, "courts in this District have noted that plaintiffs are not necessarily prejudiced by having to concurrently litigate similar claims at both the state and federal levels." *BrainBuilders*, 2019 WL 2618112, at *5 (collecting cases). Plaintiff may face an economic burden if it pursues its claims against JGS in state court. But Plaintiff's federal and state cases would comprise different facts and legal issues. Plaintiff's claims against Defendant OSI involve the meaning and scope of the Policy language and public policy arguments. By contrast, Plaintiff's proposed claims against JGS involve the nature of JGS' assistance in selecting insurance coverage. Because Plaintiff's cases against Defendant OSI and JGS would not involve "essentially the same set" of facts and issues, the Court concludes that Plaintiff would not suffer significant economic prejudice if it were required to litigate its claims against JGS separately. *See Perth Amboy*, 539 F. Supp. 2d at 749.

Nor would Plaintiff suffer significant legal prejudice if its Motion were denied. Legal prejudice may arise where plaintiffs face a "genuine risk of conflicting findings and rulings." *See id.* Plaintiff does not assert that Defendant OSI and JGS are jointly and severally liable. *Cf. id.* (concluding that a genuine risk of conflicting findings and rulings existed where the defendants were jointly and severally liable). Moreover, the merits of Plaintiff's claims against JGS appear to be contingent on the merits of Plaintiff's claims against Defendant OSI. Therefore, Plaintiff would face little, if any, risk of inconsistent rulings if it were required to bring its claims against

9

JGS in a different proceeding. The Court concludes that the third factor supports Defendant OSI's position.

D.    *Other Factors*

Other factors favor Plaintiff. Judicial efficiency and economy are appropriate considerations under *Hensgens*. *See Perth Amboy*, 539 F. Supp. 2d at 749. Although Plaintiff's claims against Defendant OSI and JGS consist of different facts and legal issues, litigating the claims together would potentially promote efficiency. Moreover, because the issues in this case require application of state law, Defendant OSI would not be unduly prejudiced if this case were remanded to state court. *See id.* (citing *Kahhan v. Mass. Cas. Ins. Co.*, 2001 WL 1454063, at *3 (E.D. Pa. Nov. 14, 2001) (noting that "when there is a lack of significant federal interest in deciding the state issues, federal courts prefer to have state courts interpret their own laws")).

As a whole, the *Hensgens* factors weigh in favor of denying Plaintiff's Motion for Leave to File a Second Amended Complaint and to Remand.

## II.    Jurisdiction under the Declaratory Judgment Act

Plaintiff requests, in the alternative, that the Court exercise its discretion under the DJA to decline jurisdiction over this case. (Pl.'s Br. at 6–7.)

As an initial matter, no parallel proceeding is pending in state court. "A parallel state proceeding is a pending matter 'involving the same parties and presenting [the] opportunity for ventilation of the same state law issues.'" *Kelly*, 868 F.3d at 284 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995)). "Such analysis contemplates comparing the state and federal action as they contemporaneously exist, not as they might eventually be." *Id.* Plaintiff has not indicated that other related litigation exists between the parties. This "absence of pending parallel

state proceedings militates significantly in favor of exercising jurisdiction." *Reifer*, 751 F.3d at 144.

Among the other enumerated *Reifer* factors, factors one, two, four, six, and seven support the Court's exercise of jurisdiction. A federal court declaration would resolve the dispute between Plaintiff and Defendant OSI. The parties would not be unduly inconvenienced by litigating in this Court, as opposed to the New Jersey Superior Court in Monmouth County. *Cf. Kelly*, 868 F.3d at 288 (concluding that the parties would not be inconvenienced by litigating in federal court, which was in the same city as the court where the plaintiffs originally filed suit). The parties do not appear to argue that other remedies would be adequate. Because there is no case between the parties pending in state court, there is no risk of duplicative litigation. And there is no indication that Plaintiff's action or the removal of this case were motivated by "procedural fencing" or a "race for res judicata."[1]

The Court concludes, however, that the third and fifth *Reifer* factors and the Third Circuit's guidance in *Summy* outweigh the Court's other considerations. Under the third factor, the Court considers "the public's interest in settlement of the uncertainty of obligation." *Reifer*, 751 F.3d at 146. "The desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *Summy*, 234 F.3d at 136. Moreover, "where the applicable state law is uncertain or undetermined, district courts should be particularly reluctant to entertain declaratory judgment actions." *Id.* at 135. In such instances, "[i]n order to maintain the proper relationship between federal and state courts, it is important that district courts 'step back' and allow the state courts the opportunity to resolve

---

[1] The eighth *Reifer* factor is inapplicable because this case does not involve an insurance company's duty to defend.

unsettled state law matters." *Id.* at 136. "[D]istrict courts should give serious consideration to the fact that they do not establish state law, but are limited to predicting it." *Id.* at 135.

This case appears to raise unsettled questions of state law. Defendant OSI argues that the issues in this case are not novel because "[c]ourts in this district routinely decide cases involving the interpretation of insurance policy provisions in the context of business interruption claims." (Opp'n at 21–22, ECF No. 18.) The Court disagrees. This case is about insurance coverage for losses resulting from an ongoing pandemic, the likes of which this country has not experienced in approximately one-hundred years. At this time, there does not appear to be clearly established legal authority from the New Jersey state courts addressing the precise legal issues in this case. *See Mattdogg, Inc. v. Phila. Indem. Ins. Co.*, 2020 WL 6111038, at *5 (D.N.J. Oct. 16, 2020). Disposition of this case will require careful application of New Jersey public policy in an unfamiliar context. *See id.* (reasoning that "consideration of [similar] claims will require careful weighing of public policy in an area of state law that is not only unsettled, but the outcome of this dispute would undoubtedly have a far-reaching effect on businesses in New Jersey"). Therefore, the public interest in resolving the uncertainty of Defendant OSI's obligation is best served by deferring to New Jersey state courts to interpret and evaluate the parties' commercial insurance contract under New Jersey law.

The fifth *Reifer* factor, which requires the Court to consider its "general policy of restraint when the same issues are pending in a state court," also supports remand. 751 F.3d at 146. Although the parties do not have pending "parallel" proceedings, cases involving similar legal issues are pending in state court. This Court has recently recognized that "[a] significant number of cases related to insurance coverage for business interruption based on COVID-19

12

closures are pending across the country, including in the New Jersey state courts." *Mattdogg*, 2020 WL 6111038, at *5. Accordingly, the fifth factor advises against exercising jurisdiction.

On balance, the factors considered by the Court counsel against retaining jurisdiction over Plaintiff's declaratory judgment action. The absence of a parallel state court proceeding and some of the *Reifer* factors support the Court's exercise of jurisdiction. The Court, however, assigns significant weight to the Third Circuit's guidance in *Summy* against entertaining jurisdiction over declaratory judgment actions that implicate unsettled questions of state law. In combination with the third and fifth *Reifer* factors, the *Summy* court's guidance warrants this Court's exercise of its discretion to decline jurisdiction over this case.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Leave to File a Second Amended Complaint and to Remand (ECF No. 15) is granted in part and denied in part. This matter will be remanded to the Superior Court of New Jersey, Law Division, Monmouth County, for further proceedings. An appropriate Order will follow.

Date: <u>November 25, 2020</u>                                  */s/ Anne E. Thompson*
                                                                                    ANNE E. THOMPSON, U.S.D.J.